UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-177-GWU

GARY L. CUPP,                                                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

Gary Cupp brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-177 Gary L. Cupp

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

09-177  Gary L. Cupp

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

09-177  Gary L. Cupp

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

09-177 Gary L. Cupp

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

09-177 Gary L. Cupp

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Cupp, a 41-year-old former maintenance mechanic, window assembler, and truck driver with a high school education, suffered from impairments related to the residuals of a closed head injury, pain in the left knee, right elbow and lower back, and depression. (Tr. 11, 17, 72). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 15, 17). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 17-18.). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 18).

The court must first determine the time frame pertinent to this appeal. Cupp alleged a disability onset date of January 2, 2003 on his DIB application. (Tr. 106). The plaintiff had filed a previous application for DIB which became final with a denial decision issued on February 23, 2006. (Tr. 9). The current ALJ declined to reopen this on the current application. (Id.). The claimant's DIB-insured status was also determined to expire on December 31, 2006. (Tr. 18). Therefore, Cupp must prove

7

09-177  Gary L. Cupp

he became disabled between February 24, 2006 and December 31, 2006 to qualify for DIB.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Bill Ellis included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) the need for a sit/stand option in 30 minute intervals; (2) an inability to more than occasionally climb, bend or stoop; (3) a limitation to jobs requiring only simple, one- or two-step instructions; and (4) a need to avoid public interaction.  (Tr. 46).  In response, Ellis identified a significant number of jobs which could still be performed.  (Id.).  Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Cupp's condition during the relevant time period, than a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error.  Cupp was found capable of performing a restricted range of light level work in the administrative decision which became final on February 23, 2006.  (Tr. 72-81).  Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is

proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ." The ALJ's findings of a restricted range of light level work is in accord with these directives.

Dr. Sudhideb Mukherjee, a non-examining medical reviewer, opined that as of Cupp's Date Last Insured, the plaintiff was limited to light level work, restricted from a full range by inability to more than occasionally climb ramps or stairs, stoop or crouch, an inability to ever climb ladders, ropes or scaffolds and a need to periodically alternate between sitting and standing. (Tr. 644-651). The hypothetical question was essentially consistent with these findings with the exception regarding no climbing ladders, ropes or scaffolds. However, the claimant has not argued that the omission of these factors was reversible error. Treatment notes from Bearden Health Care from the relevant time period do not indicate a deterioration in his condition from the prior time period. (Tr. 546-587). Treatment notes from the clinic indicate that the plaintiff's medications were giving him good pain relief in June and September of 2006. (Tr. 567, 576). In December of 2006, the claimant's pain was

said to be 100 percent improved and his functioning was improved.  (Tr. 564).  These reports provide substantial evidence to support the administrative decision.

A Dr. McNiel, a Bearden Clinic staff member, completed a Medical Assessment of Ability to do Work-Related Activities Form in April of 2008.  (Tr. 659-664).  This was more one year after the expiration of Cupp's DIB-insured status and, so, the ALJ concluded that this opinion was not pertinent to the relevant time frame.  (Tr. 17).  The ALJ also noted that the assessment did not appear to be consistent with the modest findings noted at the Bearden Clinic from the relevant time period.  (Id.).  Therefore, the court finds that the ALJ properly rejected this opinion.

The ALJ also dealt properly with the evidence of record relating to Cupp's mental status.  The mental restrictions found by the ALJ were compatible with those found by the previous ALJ.  (Tr.  80).

The ALJ also dealt properly with the evidence of record relating to Cupp's mental condition.  The Bearden Clinic staff noted a diagnosis of anxiety and indicated prescriptions for Buspar, Seroquel and Cymbalta in June of 2006.  (Tr. 570).  However, the claimant was not referred to a mental health professional and more severe mental restrictions than those found by the ALJ were not identified during the time period relevant to this appeal.

09-177  Gary L. Cupp

During the processing of the current DIB claim, Cupp was examined by Psychologist Pamela Starkey in August of 2007.  Starkey diagnosed an anxiety disorder, a possible cognitive disorder, and a depressive disorder.  (Tr. 597).  The psychologist rated the plaintiff's Global Assessment of Functioning (GAF) at 53. (Id.).  Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The examiner identified a number of mental restrictions including a "mild to moderate" ability to handle simple one- and two-step instructions and responding to supervisors and co-workers,  a "moderate" limitation in sustaining attention for tasks in a work setting and a "moderate to significant" limitation in responding to work pressures.  (Tr. 597-598).  These restrictions were arguably consistent with those found by the ALJ.  To the extent they might be considered more severe, the undersigned notes that Starkey saw the claimant almost eight months after the expiration of his DIB-insured status and, so, the limitations would not necessarily "relate back" to the pertinent time frame.  Furthermore, Cupp has not raised the omission of these restrictions as an issue.

Psychologist Laura Cutler (Tr. 600-603) and Edward Stodola (Tr. 640-643) each reviewed the record and opined that, during the relevant time period, Cupp would have a "moderate" limitation in such areas as handling detailed instructions,

11

09-177 Gary L. Cupp

maintaining attention and concentration, interacting appropriately with the general public, and responding appropriately to changes in the work setting. The mental factors of the hypothetical question were essentially consistent with these restrictions. Therefore, the court finds no error in the ALJ's handling of the plaintiff's mental condition.

Cupp argues that the ALJ erred when he denied the claimant's request to call witnesses at the administrative hearing. The plaintiff asked the ALJ if his wife could testify. (Tr. 47). The ALJ denied the request because of a lack of time. (Id.). The claimant notes that the administrative regulations at 20 C.F.R. § 498.203(6) provide that presenting and cross-examining witnesses is a right of a social security claimant. He argues that the ALJ's denial of this procedural right constituted reversible error.

The undersigned must reject Cupp's argument. The plaintiff was represented by Attorney Paul Baker (who also represents him before this court) during the administrative hearing. (Tr. 19). When the ALJ rejected Cupp's request that his wife testify, the attorney neither objected nor sought a continuance of the hearing when the ALJ would have more time. (Tr. 47). In Luteyn v. Commissioner of Social Security, 528 F.Supp. 2d 739 (W.D. Mich. 2007), an ALJ denied the claimant's request that his girlfriend testify and his legal representative did not object. The Western District of Michigan felt that the plaintiff's legal representative, by failing to

09-177 Gary L. Cupp

object to the ALJ's decision not to call the witness, waived the right to question her. Luteyn, 528 F.Supp at 745. The court in Luteyn relied heavily upon the Eighth Circuit Court of Appeals decision in Coffin v. Sullivan, 895 F.2d 1206 (8th Cir. 1990) noting that "although due process requires that a claimant be given the right to cross-examine individuals who testify [or in Luteyn's case, to call an individual to testify on a relevant manner] that right is waived if the attorney is silent when the opportunity to cross-examine arises. Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir. 1990)." Luteyn, 528 F. Supp. at 745. The Sixth Circuit Court of Appeals decision in the unpublished case of Butler v. Commissioner of Social Security, 114 F.3d 1186 (6th Cir. May 15, 1997) reached a similar finding in a case in which the claimant lost his opportunity to cross-examine the vocational expert because his attorney left the hearing before the testimony could be taken. The undersigned agrees with the reasoning of these other courts. Therefore, since the claimant's legal representative did not object at the time of the hearing, the court finds the objection waived.

The undersigned further notes that the testimony of a lay witness is entitled to significant weight only if it is fully supported by the reports of treating physicians. Lashley v. Secretary of Health and Human Services, 708 F.2d 048, 1054 (6th Cir. 1983). In the present action, the medical evidence clearly did not support a finding of deterioration in the plaintiff's condition since the earlier ALJ's denial decision.

09-177  Gary L. Cupp

The testimony of the claimant's wife would not be able to have overcome this problem. Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 18th day of March, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**